IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINO BELLUOMINI, SUSAN FLAHERTY, STELLA PASTRY CAFE, VICTORIA PASTRY CO., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CITIGROUP, INC., WELLS FARGO & COMPANY, and DOES 1 through 100,<br><br>Defendants. | No. CV 13-01743 CRB<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Plaintiffs Dino Belluomini and Susan Flaherty, owners of Stella Pastry Cafe and Victoria Pastry Co., Inc., have brought suit against Citigroup, Inc. ("Citigroup") and Wells Fargo Bank, N.A ("Wells Fargo"). Plaintiffs allege Defendants allowed Giuseppe Viola, who assisted Plaintiffs in purchasing Stella Pastry Cafe, to access Plaintiffs' business and personal bank accounts without Plaintiffs' authorization. See generally Not. of Removal, Ex. 1 (dkt. 1) (hereinafter Compl.). Defendants move to dismiss Plaintiffs' claims for (1) breach of contract, (2) negligence, (3) negligent infliction of emotional distress ("NIED"), (4) invasion of privacy in violation of Article One, Section One, of the California Constitution, and (5) common law invasion of privacy. See generally Citigroup Mot. (dkt. 14); Wells Fargo Mot. (dkt. 18). A hearing on these motions was held on June 28, 2013. For the reasons explained below, the Court GRANTS Defendants' Motions to Dismiss.

## I.   BACKGROUND

In 2007, Plaintiffs Belluomini and Flaherty, with the assistance of a person representing himself as Giuseppe Viola, purchased Stella Pastry Cafe. Compl. ¶ 9. On or about March 10, 2010, Viola was arrested for allegedly running a Ponzi scheme in which he issued cashier's checks containing Plaintiffs' names to his "investors." Id. ¶ 15. Plaintiffs' claims stem from Defendants' actions prior to Viola's arrest. See id.

Shortly after buying Stella Pastry Cafe, Plaintiffs moved all of their bank accounts to Citibank. Id. Plaintiffs contend that they never authorized Viola to have access to their accounts, and that Citigroup permitted Viola to cash checks against Plaintiffs' accounts approximately 120 times over a three-year period. Id. ¶¶ 10-11. According to Plaintiffs, such activity was not reflected on their bank statements, and Citigroup never checked Viola's identification when he accessed Plaintiffs' accounts. Id. ¶¶ 11, 16.[1]

On or about December 23, 2009, Plaintiffs opened bank accounts with Wells Fargo. Id. ¶ 12. Plaintiffs allege Viola accessed their Wells Fargo accounts on more than twelve occasions in order to cash checks and have cashier's checks issued to him, id. ¶ 14, and that Viola was never required to submit identification to Wells Fargo's bank tellers, id. ¶ 16. Plaintiff Flaherty was approached a month after Viola's arrest by Peter Scott, one of Viola's

---

[1] Defendant Citigroup argues that Plaintiffs opened their bank accounts with Citibank, not Citigroup, and that it is not liable for the actions of Citibank, its wholly owned subsidiary. Citigroup Mot. at 2-5. There are two exceptions to the rule that a parent corporation is not liable for the acts of its subsidiaries. See United States v. Bestfoods, 524 U.S. 51 (1998); Smith v. Simmons, 409 Fed. Appx. 88, 90 (9th Cir. 2010). First, the alter ego doctrine holds that a parent corporation can be found liable for the actions of its subsidiary where there is (1) such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that if the acts are treated as those of the corporation alone, an inequitable result will follow. Smith, 409 Fed. Appx. at 90 (citing Automotriz Del Golfo De Cal. v. Resnick, 47 Cal. 2d 792, 796 (Cal. 1957)). Second, an exception to the general rule applies if the subsidiary is the agent of the parent, which requires a showing that the parent "exercises such control over the subsidiary so as to render the latter the mere instrumentality of the former." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003) (internal quotation omitted).
Plaintiffs have not sufficiently pled that one or both of these exceptions applies in this case. At the hearing on these motions, Plaintiffs' attorney, who was recently retained by Plaintiffs, requested the opportunity to amend Plaintiffs' complaint to further substantiate this allegation. The Court will permit Plaintiffs to amend their complaint in order to supplement their allegation or substitute Citibank for Citigroup as defendant.

victims. Id. ¶ 19. Showing Flaherty a cashier's check that identified Flaherty as the remitter, Scott demanded $100,000. Id. Flaherty then went to a Wells Fargo bank, where a teller named Ms. Yupadee told Flaherty that "she gave the account information to Mr. Scott." Id.[2]

Plaintiffs brought this lawsuit against Defendants on March 9, 2011, for (1) breach of contract, (2) negligence, (3) NIED, (4) invasion of privacy in violation of the California Constitution, and (5) common law invasion of privacy. See id. Plaintiffs allege that, as a result of Defendants' permitting Viola access to their accounts to draw cashier's checks, they suffered harm, including losses as a result of a need for legal defense, as well as harm to their reputations which resulted in additional losses in revenue. Id. ¶¶ 20-21. Defendants now move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 8 and 12(b)(6). See generally Citigroup Mot.; Wells Fargo Mot.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 8(a)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . . , (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a). Under Rule 8(d), "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). In practical terms, the requirements of Rule 8 ensure that a defendant will be able to respond to the allegations against him. See Wang v. County of Santa Clara, No. C 07-00308 SI, 2007 U.S. Dist. LEXIS 21873, at *3 (N.D. Cal. Feb. 14, 2007) (citing Edwards v. N. Am. Rockwell Corp., 291 F. Supp. 199, 211 (C.D. Cal. 1968)).

---

[2] A cashier's check differs from an ordinary check in that the maker or drawer of the check is the bank, not the depositor. Comm. Code section 3104(g); Brady on Bank Checks ¶ 1.16. When the bank issues and subsequently pays a cashier's check, it does so with its own funds. Comm. Code § 3104(g). Therefore, a cashier's check is not "issued from" a depositor's account. Nor is it drawn on the depositor's account. Anyone can be listed as a remitter on a cashier's check. Brady on Bank Checks ¶ 1.16. The fact that someone is identified as a remitter does not mean that funds from her account were used to purchase the cashier's check. Id.

3

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). While "detailed factual allegations" are not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the district court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). The district court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996); accord Iqbal, 129 U.S. at 687.

### III. DISCUSSION

Defendants both argue Plaintiffs' claims should be dismissed because (1) Plaintiffs' breach of contract claim fails because it does not identify the terms of the purported contract(s) at issue, what terms were allegedly breached, or what damages resulted; (2) Plaintiffs' negligence and NIED claims fail because the breach of Plaintiffs' proposed duty of care is not enforceable in tort, and, in the alternative, Plaintiffs do not plead sufficient facts to establish breach or damages; and (3) Plaintiffs' invasion of privacy claims fail because Plaintiffs do not plead sufficient facts to establish an egregious breach of social norms or an intrusion that would be highly offensive to a reasonable person. Because Defendants'

4

arguments are parallel in most respects, the Court addresses them together as they relate to each of Plaintiffs' claims.[3]

### A.     Plaintiffs Fail to Sufficiently Allege Breach of Contract

Defendants argue that Plaintiffs' breach of contract allegations are deficient under (1) Federal Rule of Civil Procedure 8(a) because they are conclusory and unsupported by facts, and (2) Federal Rule of Civil Procedure 12(b)(6) because they fail to state facts sufficient to constitute a cognizable claim.

In order to state a claim for breach of contract, plaintiff must allege: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff therefrom. See Shum v. Intel Corp., 630 F. Supp. 2d 1063, 1072-73 (N.D. Cal. 2009) (citing Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008)).

---

[3] Defendants also argue that Plaintiffs' claims are barred by the statute of limitations. Under Code of Civil Procedure section 340(c), all claims brought "by a depositor against a bank for payment of a forged or raised" item are subject to a one-year period of limitations. A check bearing an unauthorized maker-signature is a forged item, see Uniform Commercial Code ("UCC") §§ 1-201(41), 3-403(b), and the statute of limitations applies to each individual check, see Chatsky & Assocs. v. Superior Ct., 117 Cal. App. 4th 873, 877 (Cal. Ct. App. 2004).

Viola was arrested on March 10, 2011, and Plaintiffs filed their complaint on March 9, 2011. Compl. ¶ 15. Defendants contend that the only purported transactions that could give rise to Plaintiffs' claims must have taken place on March 9, 2010.

Federal courts have repeatedly held that a plaintiff is not required to plead facts in his complaint in order to avoid potential affirmative defenses. See Pa. State Police v. Suders, 542 U.S. 129, 152 (2004) (explaining that there is no legal requirement for a plaintiff to allege facts in anticipation of an affirmative defense); Kohler v. Flava Enters., No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010) ("Plaintiff is correct that he is not required to plead around anticipated affirmative defenses, including the statute of limitations."); see also 5 Fed. Prac. & Proc. Civ. § 1276 (3d ed.) (noting that it is technically improper for a complaint to contain allegations seeking to defeat an affirmative defense because such allegations are not integral to the claim for relief). Dismissal of claims as barred by the statute of limitations on a Rule 12(b)(6) motion is therefore appropriate only where it is apparent from the face of the complaint that an action will be time barred. See Chubb Custom Ins. Co. v. Space Sys., 710 F.3d 946, 974 (9th Cir. 2013) (citing Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)).

Accordingly, the Court is unable at this stage to properly determine whether or not the action is barred as untimely. On a Rule 12(b)(6) motion, as noted, the Court is constrained to the pleadings, which make no mention of when the relevant breaches occurred. Dismissal at this stage would therefore be improper. The Court can revisit this issue at a later time.

1    The Court agrees with Defendants that Plaintiffs' complaint omits essential facts
2 regarding the contracts at issue, Defendants' purported breach, and Plaintiffs' damages.
3 First, Plaintiffs fail to plead with any particularity the terms of the purported contracts.
4 Plaintiffs allege that "Defendants were to safe keep the accounts and not allow any other
5 individuals besides Plaintiff to access the accounts," Compl. ¶ 23, but they do not specify the
6 contracts at issue or the terms of those contracts. Although Plaintiffs state they have attached
7 the contracts as Exhibit A, Compl ¶ 6, Exhibit A contains only a single page signature card
8 for a single Citibank account, see Compl., Ex. A.

9    Second, Plaintiffs fail to plead with any particularity facts surrounding the alleged
10 breach. It is incumbent upon a plaintiff to "allege with at least some degree of particularity
11 overt acts which defendants engaged in" which support plaintiff's claim. Sasin v. County of
12 Kings, 67 Fed. Appx. 413, 416 (9th Cir. 2003) (quoting Sherman v. Yakahi, 549 F.2d 1287,
13 1290 (9th Cir. 1977)). Where a complaint contains nothing more than conclusory
14 allegations, unsupported by facts, it fails to comply with Rule 8. See id. In support of their
15 allegations of a breach, Plaintiffs assert that "Defendants breached the agreement by failing
16 to keep the accounts safe from third party involvement." Opp'n at 9. As proof of a breach,
17 Plaintiffs assert that Defendants allowed Viola to issue cashier's checks from Plaintiffs'
18 personal accounts. Compl. ¶ 25. However, Plaintiffs never identify the dates of any of the
19 transactions they mention in their complaint. Plaintiffs do not point to any specific
20 withdrawals nor do they identify any specific checks written against their accounts. In fact, it
21 appears that no funds were withdrawn from Plaintiffs' accounts, nor were any checks drawn
22 on their accounts. Instead, Plaintiffs simply allege that Viola purchased cashier's checks by
23 "cashing checks," and that the cashier's checks identified Plaintiffs as the remitter. Id. ¶ 11.

24    Third, Plaintiffs do not plead with any particularity the damages arising from the
25 alleged breach of contract. To establish contractual damages, a plaintiff must establish
26 "appreciable and actual damage." Aguilera v. Pirelli Armstrong Tire Co., 223 F.3d 1010,
27 1015 (9th Cir. 2000) (citing Patent Scaffolding Co. v. William Simpson Constr. Co., 256 Cal.

App. 2d 506, 511 (Cal. Ct. App. 1967) ("A breach of contract without damage is not actionable.")); In re Facebook Privacy Litig., 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (holding plaintiffs failed to state a claim for breach of contract because they failed to allege any actual damages). Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury. See Aguilera, 223 F.3d at 1015; see also Ruiz v. Gap Inc., 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009). Here, Plaintiffs contend they suffered damages because they "were pulled into an investigation by the Federal Bureau of Investigation," spent approximately $125,000 to defend against the demands of various "duped investors," and lost sales and revenues because their businesses were shunned. Opp'n at 8. However, these damages are related to Plaintiffs' dealings with Viola, not any actions of Defendants. Indeed, if no funds were ever withdrawn from Plaintiffs' accounts to pay for the cashier's checks, then Plaintiffs have not suffered any damages due to the actions of Defendants.[4] Accordingly, the Court finds Plaintiffs have failed to sufficiently allege a breach of contract claim.

### B. Plaintiffs Fail to Sufficiently Allege Negligence and NIED

Defendants assert that Plaintiffs' negligence and NIED claims fail because (1) the breach of Plaintiffs' proposed duty of care is not enforceable in tort, and (2) Plaintiffs fail to plead sufficient facts to establish any breach or damages.

To state a claim for negligence under California law, plaintiff must allege: (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting injury. See Evan F. v. Hughson United Methodist Church, 8 Cal. App. 4th 828, 834 (Cal. Ct. App. 1992) (emphasis omitted). To state a claim for NIED, plaintiff must show: (1) defendant engaged in negligent conduct; (2) plaintiff suffered serious emotional distress; and (3) defendant's negligent conduct was a cause of the serious emotional distress. See Butler-Rupp v. Lourdeaux, 134 Cal. App. 4th 1220, 1226 n.1 (Cal.

---

[4] Plaintiffs do not address any of Defendants' substantive arguments on this issue of contract damages.

7

Ct. App. 2005). Damages for emotional distress may be recovered only "when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a special relationship between the two." Christensen v. Superior Ct., 54 Cal. 3d 868, 890 (Cal. 1991). Absent a duty, there can be no finding of negligence. Goldberg v. Frye, 217 Cal. App. 3d 1258, 1267 (Cal. Ct. App. 1990).

Plaintiffs allege that "Defendants . . . had a duty to exercise reasonable care in the ownership, management, and control of their Institutions. Further, they had a fiduciary duty to exercise reasonable care in managing the monies deposited by Plaintiffs and managing their accounts as not to allow unauthorized access to any other individual." Compl. ¶ 28. Plaintiffs' claim is based on a mistaken understanding of the law.[5]

Banks do not owe a fiduciary duty to depositors. Copesky v. Superior Ct., 229 Cal. App. 3d 678, 694 (Cal. Ct. App. 1991) ("It is thus our conclusion that banks, in general and in this case, are not fiduciaries for their depositors; and that the bank-depositor relationship is not a 'special relationship' . . . such as to give rise to tort damages."); see also Lawrence v. Bank of America, 163 Cal. App. 3d 431, 437 (Cal. Ct. App. 1985) ("[U]nder ordinary circumstances the relationship between a bank and its depositor is that of debtor-creditor, and is not a fiduciary one.").

Although Plaintiffs request permission to amend their complaint to remove the word "fiduciary," Opp'n at 8, such amendment would be futile. Actions in tort by a depositor cannot be brought for simple breach of a deposit contract. See Copesky, 229 Cal. App. 3d at 694. Rather, a breach of contract "becomes tortious only when it also violates an independent duty arising from the principles of tort law." Erlich v. Menezes, 21 Cal. 4th 543, 551 (Cal. 1999); Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 102 (Cal. 1995); Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 515 (Cal. 1994).

---

[5] Plaintiffs concede that the individual businesses do not have a cause of action for NIED. Opp'n at 11.

1 Because Defendants do not have an independent duty to Plaintiffs, Plaintiffs cannot maintain
2 an action in tort.

3 Moreover, Plaintiffs have failed to plead sufficient facts to establish any breach or
4 damages. It appears that no checks were actually drawn on Plaintiffs' accounts, and
5 Plaintiffs cannot point to any checks improperly issued. Plaintiffs are under the
6 misimpression that the cashier's checks Viola purchased were issued against Plaintiffs'
7 personal accounts, when in fact they, like all other cashier's checks, were issued against the
8 funds of the bank. See Comm. Code § 3-104(g); Brady on Bank Checks ¶ 1.16. Likewise,
9 because no funds were ever withdrawn from Plaintiffs' accounts to pay for the cashier's
10 checks, Plaintiffs have not alleged any damages nor an "appreciable, nonspeculative, present
11 injury" arising out of Defendants' actions. See Jimenez v. Superior Ct., 29 Cal. 4th 473, 483
12 (Cal. 2002).

13 Plaintiffs assert they have sufficiently plead facts to establish damages, pointing to the
14 $125,000 Plaintiffs spent on legal assistance and the dramatic drop in sales and revenues they
15 experienced over the last year. Compl. ¶ 19-20. Plaintiffs' damages analysis, however,
16 relies on its assertion that Defendants were negligent and breached a legal duty in managing
17 their accounts. Defendants owed no legal duty to Plaintiffs, and Plaintiffs do not present
18 another theory for why their attorneys' fees or lost revenue should be recoverable absent
19 such duty. Accordingly, the Court finds Plaintiffs have failed to sufficiently allege causes of
20 action for negligence and NIED.[6]

---

[6] Defendants also argue that Plaintiffs' NIED claim fails because Plaintiffs do not allege physical injury. Citigroup Mot. at 10; Wells Fargo Mot. at 9-10. Defendants cite a litany of cases supporting their argument. See Wells Fargo Mot. at 9-10. Plaintiffs cite Molien v. Kaiser Foundation Hospitals in support of their argument that a cause of action for NIED is viable even without a showing of physical injury. 27 Cal. 3d 916, 925 (Cal. 1980); Opp'n at 10. The Court need not rule on this issue in addressing this case.

9

### C. Plaintiffs Fail to Sufficiently Allege Invasion of Privacy Under the California Constitution or at Common Law

Defendants contend that Plaintiffs' invasion of privacy claims fail because Plaintiffs have not alleged a sufficiently serious invasion of privacy.

The California Constitution creates a privacy right that protects individuals from the invasion of their privacy by private parties. Am. Acad. of Pediatrics v. Lungren, 16 Cal. 4th 307 (Cal. 1997); Leonel v. Am. Airlines, Inc., 400 F.3d 702, 711-12 (9th Cir. 2005), opinion amended on denial of reh'g, No. 03-15890, 2005 U.S. App. LEXIS 7328 (9th Cir. Apr. 28, 2005). To state a claim for a violation of the California Constitutional right to privacy, plaintiff must allege: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by defendant that amounts to a serious invasion of the protected privacy interest. Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 35-37 (Cal. 1994).

These elements serve as threshold components of a valid claim to be used to "weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." Loder v. City of Glendale, 14 Cal. 4th 846, 893 (Cal. 1997). "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." Hill, 7 Cal. 4th at 37. Thus, if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." Pioneer Elecs., Inc. v. Superior Ct., 40 Cal. 4th 360, 370 (Cal. 2007) (citing Hill, 7 Cal. 4th at 40).

The elements of a common law invasion of privacy claim are similarly stringent. A plaintiff must allege that: "(1) plaintiff had a reasonable expectation of privacy in a certain circumstance, (2) defendant intentionally intruded into that circumstance, (3) defendant's intrusion would be highly offensive to a reasonable person, (4) plaintiff was harmed, and (5)

defendant's conduct was a substantial factor in causing plaintiff's harm." Hoffman v. Cenlar Agency, Inc., No. 12cv414 L (NLS), 2013 U.S. Dist. LEXIS 43860, at *12-13 (S.D. Cal. Mar. 27, 2013).

The California Constitution and the common law both set a high bar for an invasion of privacy claim. Even disclosure of personal information, including social security numbers, does not constitute an "egregious breach of the social norms" to establish an invasion of privacy claim. See, e.g., Folgelstrom v. Lamps Plus, Inc., 195 Cal. App. 4th 986, 992 (Cal. Ct. App. 2011) ("Here, the supposed invasion of privacy essentially consisted of [defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior."); In re iPhone Application Litig., No. 11-MD-02250-LHK, 2012 U.S. Dist. LEXIS 81426, at *15-16 (June 12, 2012) (holding that disclosure to third parties of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy); Ruiz, 540 F. Supp. 2d at 1127-28 (holding that theft of a retail store's laptop containing personal information, including social security numbers of job applicants, did not constitute an egregious breach of privacy and therefore was not sufficient to state a claim for the California Constitutional right to privacy).

Plaintiffs allege a serious invasion of privacy occurred when Defendants permitted a third party, in this case Viola, to "access" Plaintiffs' accounts. Plaintiffs claim Wells Fargo again breached Plaintiffs' privacy by divulging Plaintiffs' "information" to Peter Scott, another third party. Regardless of the privacy law on which Plaintiffs rely, they have failed to allege sufficient facts to establish a highly offensive disclosure of information or a "serious invasion" of a privacy interest.[7]

Plaintiffs do not explain what they mean by "access" or "information." There are no facts supporting Plaintiffs' allegations that there were any unauthorized withdrawals made

---

[7] Plaintiffs concede that the individual businesses do not have a cause of action for invasion of privacy. Opp'n at 16.

11

from Plaintiffs' accounts.  Even if Viola's cashier's checks listed Plaintiffs as remitters, by the very nature of cashier's checks, the purchaser of a check can put any name he wishes as the remitter.  <u>See</u> Comm Code § 3-104(g); Brady on Bank Checks ¶ 1.16.  Additionally, Plaintiffs seem to allege that the only "information" that Wells Fargo provided to Scott was Plaintiffs' contact information.  Given that disclosure of individual's social security numbers does not constitute an "egregious breach," it certainly cannot be the case that disclosure of contact information constitutes an "egregious breach."  <u>See</u> <u>In re iPhone Application Litig.</u>, 2012 U.S. Dist. LEXIS 81426, at *15-16.  Plaintiffs have not sufficiently alleged that Defendant's conduct "amounts to a serious invasion" of the protected privacy interest, <u>see Hill</u>, 7 Cal. 4th at 26, and therefore have failed to state a claim for invasion of privacy under the California Constitution or at common law.

### D. The Court Will Grant Leave to Amend for Plaintiffs' Breach of Contract Claim and for Plaintiffs' Invasion of Privacy Claims in Their Individual Capacities[8]

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).  When dismissing a complaint for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.  <u>Id.</u> at 1127; <u>see also</u> <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d 242, 247 (9th Cir. 1990).  Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  <u>Leadsinger, Inc. v. BMG Music Publ'g</u>., 512 F.3d 522, 532 (9th Cir. 2008).

---

[8] <u>See</u> <u>supra</u> note 1.

12

Plaintiffs' breach of contract claim might be cured by amendment, specifically by providing the contract(s) at issue and sufficiently pleading breach and damages. This would involve identifying the dates of any of the transactions they mention in their complaint, pointing to specific, unauthorized withdrawals, and identifying specific, unauthorized checks written against their accounts   Likewise, Plaintiffs' claims for invasion of privacy might be cured by amendment, but only regarding Plaintiffs in their individual capacities.

In contrast, leave to amend Plaintiffs' claims of negligence and NIED would be futile because the theories upon which the claims are based are legally defective.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motions to Dismiss of Citigroup and Wells Fargo. The Court DISMISSES WITHOUT PREJUDICE the claims for breach of contract of all Plaintiffs and the invasion of privacy claims of Belluomini and Flaherty. The Court DISMISSES WITH PREJUDICE the negligence and NIED claims of all Plaintiffs and the invasion of privacy claims of Stella Pastry Cafe and Victoria Pastry Co., Inc.

**IT IS SO ORDERED.**

Dated: July 23, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE